476 A.2d 1340

**Joseph CISCO, Appellant,**

v.

**UNITED PARCEL SERVICES, INC.**

Superior Court of Pennsylvania.

Argued Nov. 21, 1983.

Filed May 11, 1984.

Joseph A. Malley, III, Media, for appellant.

Philip J. Katauskas, Philadelphia, for appellee.

Before MONTEMURO, WATKINS and CERCONE, JJ.

CERCONE, Judge:

This appeal is taken from an order sustaining preliminary objections in the nature of a demurrer to appellant Joseph Cisco's complaint in trespass. The trial court held that the

criminal charges which were filed against Cisco provided his employer, United Parcel Service, appellee herein, with a plausible and legitimate reason for terminating his employment, and that no public policy was violated thereby. It, therefore, found that no cause of action was possible and dismissed the complaint. We affirm.

The averments of the complaint disclose that appellant, Joseph Cisco, was employed by United Parcel Service, hereinafter U.P.S., from October of 1973 until May of 1980. On a particular day in May, Cisco made a routine delivery of parcels to the residence of Dr. and Mrs. Chaplan. As a result of that delivery, appellant argues that malicious and unfounded charges of theft and trespass were brought against him, from which he was subsequently acquitted by a jury. However, prior to acquittal and while the charges were pending, representatives of U.P.S. questioned him continually about them and informed him that if he did not resign, that he would be terminated. Cisco then resigned in June 1980. After his acquittal, Cisco made repeated unsuccessful requests to be reinstated. He then filed this action in trespass and requested lost wages in the amount of Twenty-five Thousand Dollars and damages for emotional trauma, and, in the alternative, reinstatement to his former position.

These facts and all reasonable inferences therefrom have been admitted by appellee's demurrer. *Gekas v. Shapp*, 469 Pa. 1, 5, 364 A.2d 691, 693 (1976); *Buchanan v. Brentwood Federal Savings and Loan Association*, 457 Pa. 135, 139, 320 A.2d 117, 120 (1974). In determining whether a complaint is sufficient to state a cause of action, we are guided by the rule that a demurrer may be sustained only in clear cases, and all doubts must be resolved in favor of the sufficiency of the complaint. *Martin v. Little, Brown and Co.*, 304 Pa.Super. 424, 428–9, 450 A.2d 984, 987 (1981).

Appellant was an at-will employee of U.P.S. "In general, there is no non-statutory cause of action for an employer's termination of an at-will employment relationship." *Reuth-*

*er v. Fowler and Williams, Inc.*, 255 Pa.Super. 28, 31, 386 A.2d 119, 120 (1978). However, with the case of *Geary v. U.S. Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974), our Supreme Court established the principle that an employee at-will may have a cause of action against the employer for wrongful discharge when the discharge threatens public policy.[1] In *Geary*, the Court held that where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at-will has no right of action against his employer for wrongful discharge. While in that case the employee's actions in vigorously expressing his reservations about a certain product of his employer were termed "praiseworthy" by the Court, it inferred that he had become a nuisance which disrupted his employer's normal operational procedures. Therefore, the Court affirmed the order of the trial court sustaining U.S. Steel's demurrer. The Court did add:

> It may be granted that there are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened. The motion that substantive due process elevates an employer's privilege of hiring and discharging his employees to an absolute constitutional right has long since been discredited. (footnote omitted) *Geary*, 456 Pa. at 184, 319 A.2d at 180.

1. A number of states have judicially recognized this public policy exception to the at-will doctrine: California, Connecticut, Idaho, Illinois, Indiana, Kentucky, Michigan, New Hampshire, New Jersey, New York, Oregon, Pennsylvania, West Virginia and Wisconsin. Michigan and South Dakota have passed legislation that partially constrains the at-will doctrine. For a description of recent developments in this doctrine, see Note, "Public Policy Limitations to the Employment at-Will Doctrine since *Geary v. United States Steel Corporation,*" 44 U.Pitt.L.Rev. 1115 (1983).

These words have been the authority for the public policy exception to at-will employment relationships in *Geary's* progeny.

In *Reuther v. Fowler and Williams, Inc., supra,* we reversed the trial court's grant of a non-suit in an action in trespass by a former employee against his employer for having terminated him for serving on jury duty. The trial court held that the employee did indeed have a cause of action, but granted the non-suit on the ground that appellant's evidence disclosed that his employer fired him, not because of the jury duty, but because he had been discourteous and inconsiderate in failing to notify his employer that he would definitely be away from his post for one week. We reversed because a jury could have drawn two contradictory inferences from appellant's testimony: one, that the employer was so inconvenienced by the employee's inconsiderate behavior that discharge was appropriate; or two, that the employer was irked by the employee's declining to be excused from jury duty that he fired him. Under the first inference, the employee would probably not recover damages; but, the second inference, because it impinged on the important public policy of promoting the citizen's responsibility to serve on juries, could have resulted in recovery for the employee. Thus, the exception of *Geary* was evident.

In *Hunter v. Port Authority of Allegheny County,* 277 Pa.Super. 4, 419 A.2d 631 (1980), the appeal was from the trial court's order dismissing an employee's complaint for failure to state a cause of action, as in the instant case. Hunter had been convicted of assault arising from a domestic dispute thirteen years prior to his application for employment as a bus driver with a public employer. He had been unconditionally pardoned by the governor prior to his application. Hunter argued that Article I, Section 1 of the Pennsylvania Constitution guaranteed him the right to be fairly considered for public employment. We agreed, distinguishing *Geary* because that case did not involve constitutional rights, a public employer, or a claim involving a

refusal to hire a job applicant. In addition, we found a deeply ingrained public policy of the State to avoid unwarranted stigmatization of former offenders. Thus, because a cause of action was possible in *Hunter*, we reversed, finding that the trial court improperly sustained the employer's demurrer by considering facts not averred in the complaint. We took exception to the Court's conclusion that an assault conviction supports a refusal to hire because a bus driver is constantly dealing with the public under stressful situations. We found it was important for the trial court to know why Hunter was pardoned in order to connect the assault with the prospective employment.[2]

> "We hold ... that when a public employer denies employment to an individual because of his criminal record, the employer's denial of employment must be reasonably related to the furtherance of a legitimate public objective." *Id.*, 277 Pa.Superior Ct. at 17, 419 A.2d at 638.

Because the employer's reasonableness was not apparent on the face of the complaint, its demurrer was erroneously sustained.

Then, in *Yaindl v. Ingersoll-Rand Co. Standard Pump Aldrich Division*, 281 Pa.Super. 560, 422 A.2d 611 (1980), we observed that "the precise extent to which the employer's interest in running his business is limited by considerations of public policy cannot be stated but must be worked out on a case-by-case basis," *Id.*, 281 Pa.Superior Ct. at 572, 422 A.2d at 617. The trial court granted summary judgment to both counts in trespass, wrongful discharge and interference with prospective employment. Our court affirmed the dismissal of the wrongful discharge claim as no clear public policy was threatened by appellant's discharge.[3]

---

**2.** "It might have been granted because appellant was innocent but erroneously convicted, or because mitigating circumstances existed at the time of the offense, or because appellant's rehabilitation subsequent to the offense warranted a pardon." *Hunter*, 277 Pa.Superior Ct. at 15, 419 A.2d at 637.

**3.** Our court considered the circumstances of appellant's discharge by weighing several factors, balancing against appellant's interest in

We also considered the employer's review by a high company official of the discharge as weighing heavily in the employer's favor.

■ What we may glean from *Geary, Reuther, Hunter,* and *Yaindl* is the necessity for a thorough review of the circumstances surrounding a discharge of an at-will employee.[4] First, we must discern whether any public policy is threatened thereby; second, even when an important public policy is involved, an employer may discharge an employee if he has separate, plausible and legitimate reasons for doing so.

Initially, we must determine whether the discharge and subsequent refusal to rehire an employee charged with theft and trespass but who was later acquitted, violated any public policy. The instant complaint characterizes the charges against appellant as malicious and unfounded. Appellee accepts this description by its demurrer. Moreover, support for it is drawn from appellant's subsequent acquittal.

A clear statement of what public policy actually consists is hindered by its varying manifestations. As the Supreme Court of New Jersey observed:

> The sources of public policy [which may limit the employer's right of discharge] include legislation; administrative rules, regulation, or decision; and judicial decision. In certain instances, a professional code of ethics may contain an expression of public policy.... Absent legisla-

making a living, his employer's interest in running its business, its motive in discharging appellant and its manner of effecting the discharge, and any social interests or public policies that may be implicated in the discharge.

**4.** United States District Courts and the Third Circuit Court of Appeal have had myriad opportunities to interpret this development of Pennsylvania law. Specifically, *see Molush v. Orkin Exterminating Co., Inc.* 547 F.Supp. 54 (E.D.Pa.1982) (former employee who alleged that he underwent a polygraph examination, pleaded valid cause of action for tortious discharge under public policy embodied in Pennsylvania anti-polygraph statute, 18 Pa.C.S.A. § 7321.) *And see Perks v. Firestone Tire and Rubber Co.,* 611 F.2d 1363 (3d Cir.1979).

tion, the judiciary must define the cause of action in case-by-case determinations.

*Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72, 417 A.2d 505, 512 (1980), in Pierce, Mann, Roberts, "Employee Termination at-Will: A Principled Approach," 28 Villanova L.R. 1, 26 (1982).

■ Appellant urges that a criminal defendant's right to a presumption of innocence is the public policy involved in his case. He argues that the guarantee of this right carries little or no impact if an individual may be arbitrarily discharged from his source of livelihood merely because of an accusation. Section (b) of the Criminal History Record Information Act, 18 Pa.C.S.A. § 9125, lends support to his contention.

(b) Use of information.—Felony and misdemeanor convictions may be considered by the employer only to the extent to which they relate to the applicant's suitability for employment in the position for which he has applied.

The 1982 amendment to this section substituted "Felony" for "Arrests." While a perusal of legislative history of this change proved unhelpful, it may reasonably be surmised that any experience with the criminal justice system which falls short of a conviction is not a fair consideration by an employer considering hiring an individual with that experience. Indeed, even convictions for felonies and misdemeanors may be considered only insofar as they relate to an applicant's suitability for the job. We may assume that this principle is an expression of public policy.

■ However, this case can be distinguished from the situations protected by the above-cited Act. U.P.S. was not examining a cold rap sheet of a job applicant. This case involves an arrest arising from appellant's performance of his extant duties, not an incident arising thirteen years earlier on an unconnected matter, as in *Hunter, supra.* It is not a hiring situation, by a public employer as in *Hunter,* but a discharge and refusal to rehire by a private company. This situation, in addition, gives rise to an inference that the reputation and business activity of U.P.S. were jeopardized

by a mere arrest, even one which ultimately resulted in an acquittal. While the full panoply of rights incident to a criminal defendant were entitlements of appellant in his trial experience, including the right to be presumed innocent until proven guilty, these rights which are ensured by both the United States and Pennsylvania Constitutions are not necessarily meant to, nor can they, be superimposed into an accused's remaining life experiences. Thus, marriages crumble when one is adjudged guilty without ever being considered innocent and jobs are lost when the employer, for a legitimate business reason, cannot risk even someone under suspicion of having committed theft and trespass when the nature of its business is to enter onto the premises of others and to deliver parcels which belong to them. Thus, our survey of the applicable case law constrains us to affirm the order of the lower court which dismissed his complaint. We have concluded that a plausible and legitimate reason for appellant's discharge existed in that his employer was protecting its reputation, by discharging an employee who was accused of theft and trespass in connection with his employment, even though a jury ultimately acquitted him. Moreover, we agree with the lower court that this case did not violate any public policy of Pennsylvania.

Order of the lower court affirmed.