## Dorsey v. Kalathas

*Joseph A. Klein,* for plaintiff.
*Spero T. Lappas,* for defendant.

DOWLING, *J.,* October 8, 1986 — We are here confronted with an oxymoron which, while not as obvious as say Christian soldier, amateur prostitute, or public defender, is nevertheless, a contradiction in terms, and while perhaps not as subtle as another legal oxymoronic expression, negative pregnant, is nevertheless of insidious nature and of widespread use. We refer to a speaking demurrer, i.e. a demurrer which introduces a new fact which does not appear on the face of a complaint; one which instead of limiting itself to the allegations, injects propositions not appearing in the pleading and in reliance upon such interpolations, seeks to challenge plain-

tiff's right to recovery. Thus, in order to sustain itself, it requires the aid of a fact not appearing in the attacked pleading. It is condemned both by the common law and our rules of civil practice and is illustrated in the following case.

The guiding principle in dealing with a demurrer has been stated so often that like the child in the swing who goes too high and finally tops the arc, its purpose has been defeated. It has been announced so repeatedly that many pay it only lip service. Nevertheless, one more time. When you demur, you accept the facts pleaded as gospel. You are rivetted to the allegations, just as a mountain climber in repelling from a rock face is utterly dependent upon his rope. One cannot slip in a word here, bend an inference there, or ignore a fact. You are, like our climber, on your own.

This is an action for wrongful discharge. Plaintiff, in her amended complaint, alleges that she was employed as a waitress at defendant's cafe, under an oral contract of employment at will. Sometime after she began working, defendant installed electronic poker machines in his establishment. Plaintiff's duties were expanded to include paying customers for games won on these machines. She was expressly told by defendant that this was part of her job. While performing these duties, she was arrested by the police and charged with a violation of the Crimes Code, i.e. 18 Pa.C.S. §5513 (Gambling Devices). In order to avoid criminal prosecution, she agreed to cooperate with the police in the on-going investigation of defendant's illegal gambling devices. She advised Mr. Kalathas that she was willing to return to work, but would not involve herself in any services relating to the illegal poker machines. Defendant then advised plaintiff that "based on her refusal to engage in activities involving illegal gam-

bling devices, her services would no longer be required."

The question then is do these facts state a cause of action of wrongful discharge.

The seminal case in Pennsylvania has to be *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 194 (1974). There, plaintiff, employed as a salesman, called to the attention of his superiors that a product manufactured by his employer, which plaintiff was required to sell, was defective and dangerous. When he persisted in expressing his reservations, the product was withdrawn from the market, but he was discharged. In a 4 to 3 decision, with a vigorous dissent filed by Justice Roberts and joined in by Justices Nix and Manderino, it was held that absent a statutory or contractual provision to the contrary, either party had the right to terminate an employment relationship for any or no reason. However, in the course of the opinion, Justice Pomeroy, writing for the majority, had this to say:

"There is nothing here from which we could infer that the company fired Geary for the specific purpose of causing him harm *or coercing him to break any law* or otherwise, to compromise himself." 456 at 180 (emphasis added).

Of interest also is a footnote (no. 16, 456 Pa. 183) in which the court distinguishes a case relied on by appellant because it involved the dismissal for the employee's refusal to commit perjury, and was recognized as an exception on public policy grounds.

Ten years later in *Cisco v. United Parcel Service Inc.*, 328 Pa. Super. 300, 476 A.2d 1340 (1984), the Superior Court, citing *Geary,* stated the Supreme Court established the principle that an employee at will may have a cause of action against the employer for wrongful discharge when the discharge threatens public policy. They then discussed a number of

other decisions and reached the conclusion that in a case of this nature it must first be determined whether a public policy is threatened, and secondly, even when an important public policy is involved, whether an employer may have a separate and legitimate reason for discharging an employee. They also cited with approval from the opinion of the lower court to the effect that the public policy must be one that "strikes at the heart of the citizen's social rights, duties, and responsibilities." Returning to the instant case, if a refusal to perform an illegal act does not strike at the heart of one's social responsibilities, what does?

Defendant has fastened on the language in *Cisco,* supra, that even though public policy is involved, an employer may discharge if he has separate, plausible and legitimate reasons for doing so. He then makes the ingenious and rather fatuous argument that he has an interest in keeping his premises free from gambling and that since his employee was arrested for that activity, he is protecting his business reputation by discharging her. This argument has all the chutzpah of defendant's plea at the sentencing hearing for the murder of his parents that he is an orphan and that the court should therefore have mercy on him. It was the employer who was carrying on the gambling activities and who fired the employee because she refused to participate.

It is in the argument, that the employee was disloyal in agreeing to aid the police in investigating his operations that defendant slips into a speaking demurrer. Defendant is, in effect, saying that he did not discharge the employee because she would not participate in the illegal gambling, but rather because she evidenced disloyalty in aiding the police. The legal significance of this defense, if any, cannot be determined on a demurrer to the complaint. De-

fendant may put forth what he contends were his real reasons for firing the employee, but this he will have to do in subsequent pleadings or more likely at the time of trial. As the court said in *Cisco,* supra, it is necessary to thoroughly review all the circumstances surrounding the discharge of an at-will employee. The present posture of the case hardly permits this.

The several cases otherwise relied upon by defendant, i.e. *Adams v. The Budd Company,* 583 F.Supp. 711 (1984) and *Yaindl v. Ingersoll-Rand Company,* 281 Pa. Super. 560, 422 A.2d 611 (1980), both concern situations where the employee was fired because he claimed that defendant's product posed a safety hazard. They did not concern an employer's insistence that his employee engage in the illegal activity of gambling.

This matter will have to go forward.

Accordingly, we enter the following

## ORDER

And now, this October 8, 1986, defendant's demurrer objections are dismissed.