## Elliott v. Horizons Unlimited Computer Services Inc.

*John A. Gill,* for plaintiff.
*John A. Wolfe,* for defendants.

KUHN, *J.*, October 18, 1989 — Plaintiff filed suit on January 27, 1988, claiming that he was employed by defendant, Horizons Unlimited Computer Services Inc., t/d/b/a The Computer Shoppe but that he was not paid his full commissions and overtime wages. He claims, in count III, that he was wrongfully discharged from his employment on June 11, 1987, two days after he informed defendant that he had filed a claim with the Pennsylvania Department of Labor and Industry under the Wage, Payment and Collection Act, 43 P.S. §260.1 et seq. He contends that his discharge was in retaliation for filing this claim.

Defendant filed a motion for partial summary judgment seeking dismissal of count III. The parties agree that plaintiff was an at-will employee. The issue is whether a discharge in retaliation for filing a claim under the Wage, Payment and Collection Act violates public policy and therefore creates a cause of action for wrongful discharge.

At least since *Henry v. Pittsburgh and Lake Erie Railroad Co.*, 139 Pa. 289, 21 Atl. 157 (1891), Pennsylvania common law has followed the general principle of employment law that an employer could discharge an employee, at its pleasure, without cause, unless restrained by an employment contract or statute. This principle, known as the employment-at-will doctrine, prevailed in most other states as well.

Erosion of the at-will doctrine began in 1959 when the California courts opened the door to an action for wrongful discharge in *Peterman v. International Brotherhood of Teamsters*, 174 Cal. App. 2d 184 (1959). There, on public policy grounds, the court recognized a non-statutory cause of action arising from an employee's dismissal for refusing to commit perjury.

The Pennsylvania courts began to reassess the at-will doctrine in *Geary v. United States Steel Corporation,* 456 Pa. 171, 319 A.2d 174 (1974). There the court acknowledged, in dicta, the possible existence of an exception to the doctrine when the discharge is motivated by a specific intent to harm the employee or violates a clear mandate of public policy. The court observed that:

"[T]here are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened . . . " 456 Pa. at 184, 319 A.2d at 180.

Unfortunately, our Supreme Court has not spoken further on wrongful discharge since *Geary.* Nevertheless, it is now well-settled in Pennsylvania that where a discharge of an employee threatens a clearly mandated public policy which strikes at the heart of a citizen's social rights, duties and responsibilities, a cause of action *may*[1] be stated for wrongful discharge. *McGonagle v. Union Fidelity Corporation,* 383 Pa. Super. 223, 556 A.2d 878 (1989). However, using a case-by-case approach our courts have attempted to define the limits of this exception. *Yaindl v. Ingersoll-Rand Company,* 281 Pa. Super. 560, 572, 422 A.2d 611, 617 (1980). Sources from which public policy is drawn may include legislation, administrative rules, regulations and judicial decisions. *Cisco v. United Parcel Services Inc.,* 328 Pa. Super. 300, 306, 476 A.2d 1340, 1342-3 (1984). Novel theories of public policy have

---

1. Even if an important public policy is threatened a discharged employee cannot recover if the employer has a separate, plausible and legitimate reason for doing so. *Cisco v. United Parcel Services Inc.,* 328 Pa. Super. 300, 476 A.2d 1340 (1984).

been refused recognition. *Darlington v. General Electric,* 350 Pa. Super. 183, 209, 504 A.2d 306, 319 (1986).

Since 1974, it has become apparent that the public policy exception to the at-will doctrine is quite narrow. *Marsh v. Boyle,* 366 Pa. Super. 1, 8, 530 A.2d 491, 495 (1987). In fact, the Superior Court has only recognized the public policy exception in two cases. First, in *Reuther v. Fowler & Williams Inc.,* 255 Pa. Super. 28,. 386 A.2d 119 (1978), an employee stated a cause of action for wrongful discharge where he alleged dismissal for having taken off work to serve on jury duty. The court felt that the jury system and, correspondingly, jury service was of the highest importance in our legal system. Jury trial is guaranteed by the Sixth Amendment to the U.S. Constitution and Article I, section 6 of the Pennsylvania Constitution. Therefore, the necessity of having citizens freely available for jury service was considered a recognized facet of public policy.[2]

The second case was *Hunter v. Port Authority,* 277 Pa. Super. 4, 419 A.2d 631 (1980) where a governmental agency refused to hire an employee who had been convicted of assault but was later pardoned. The court looked to legislation, judicial precedent, and the Pennsylvania Constitution in determining that the employee stated a cause of action when his past criminal behavior was not reasonably related to his fitness to perform the job being sought. In 1979, the legislature had adopted the Criminal History Record Information Act, 18 Pa.C.S. §1901 et seq. which limited the employer's use of criminal records when making employment

---

2. Now the employee is statutorily protected from discharge for responding to jury summons. 42 Pa.C.S. §4563.

decisions. The act provides for injunctive relief and/or civil damages (section 9183) when an employer violates the provisions of the act (section 9125) concerning use of the employer's prior criminal record as a hiring consideration. Furthermore, the Supreme Court had earlier discussed "the deeply ingrained public policy of this state to avoid unwarranted stigmatization of and unreasonable restrictions on former offenders." *Secretary of Revenue v. John's Vending Corp.*, 453 Pa. 488, 494, 309 A.2d 358, 362 (1973). Finally, the court noted that Article I, section 1 of the Pennsylvania Constitution has been interpreted as guaranteeing an individual's right to engage in a common occupation. The court therefore found the substantial public policy favoring the rehabilitation of former offenders and their reintegration into society as compelling as the public policy involved in *Reuther*.

Interestingly, at least one Superior Court panel has cited or suggested other instances of public policy which support a cause of action for wrongful discharge. *McGonagle v. Union Fidelity Corp., supra,* cited *Frampton v. Central Indiana Gas Co.,* 297 N.E.2d 425 (Indiana 1973); *Perks v. Firestone Fire & Rubber Co.,* 611 F.2d 1363 (3d Cir. 1979); *Novosel v. Nationwide Insurance Co.,* 721 F.2d 894 (3d Cir. 1983); and *Woodson v. AMF Leisureland Centers Inc.,* 842 F.2d 699 (3d Cir. 1988) as examples of recognized and significant public policy interests.

In *Frampton v. Central Indiana Gas Co., supra,* the Indiana Supreme Court announced that a cause of action was stated for discharging an employee who pursued workmen's compensation benefits. As expansive as this decision may have appeared at the time, its reasoning was very narrow. The Indiana Workmen's Compensation Act expressly pro-

hibited use of any "device" to relieve an employer of its obligation under the act. The court ruled that threat of discharge is such a "device" and is "in clear contravention of public policy." 297 N.E.2d at 248.

One year later our Supreme Court in *Geary, supra,* in footnote 16 cited *Frampton, supra,* as a case where " . . . the mandates of public policy were clear and compelling . . . " 456 Pa. at 183-4, 319 A.2d at 180. Unfortunately, however, the court did not explain whether its reference to *Frampton* was because the Indiana statutes prohibits "devices," or whether any threat to discharge an employee seeking workmen's compensation benefits violates public policy. This distinction is important because the Pennsylvania Workmen's Compensation Act, 77 P.S. § 1 et. seq., contains no statutory prohibition similar to Indiana's protective language.

Our court felt this distinction was critical in holding that discharge for filing a workmen's compensation claim did not violate public policy in *Dietz v. Round Hill Foods Inc.,* 49 D.&C. 3d 222 (1987). In fact, we noted in that opinion that when the issue was recently discussed by the Indiana courts in *Rice v. Grant County Board of Commissioners,* 472 N.E. 2d 213 (Ind. App. 2d Dist. 1984) it was noted that,

"[A]lthough the court in *Frampton* spoke in terms of public policy, it did so in the sense of enforcing a specific statutory prohibition against the use of any 'device' to relieve an employer of its obligation under the Workmen's Compensation Act. An attempt to declare any discharge unlawful where the reason for the discharge is contrary to general public policy was specifically rejected [by other cases]. Such a broad exception was left for legislative expression of

what constitutes public policy or which of competing public policies should be given precedence." 472 N.E.2d at 215.

Interestingly, the *McGonagle* court did not cite *Bittinger v. American Can Co.,* 574 F.Supp. 306 (M.D. Pa. 1983) or *Michelson v. Exxon Research and Engineering Co.,* 629 F.Supp. 418 (W.D. Pa. 1986),[3] both of which held that a common-law cause of action exists for a claim of wrongful discharge in retaliation for filing a workmen's compensation claim. The holding in these cases has never been cited with approval by any Pennsylvania appellate court. We therefore take the position, as we did in *Dietz, supra,* that *Geary, supra,* cited *Frampton, supra,* for the proposition that an important and recognized public policy will be found where the legislature has clearly proscribed discrimination or discharge of an employee seeking benefits under a statutory scheme. Otherwise, the public policy is not so clearly manifested so that when threatened, protection is afforded as an exception to the at-will doctrine.

In *Perks v. Firestone Tire & Rubber Co., supra,* the Third Circuit had its first chance to analyze *Geary, supra,* and *Reuther, supra.* There an employee was discharged for refusing his employer's request to submit to a polygraph examination during a company investigation. The court felt that section 7321(a) of the Pennsylvania Crimes Code, 18 Pa.C.S. §7321(a), making it a misdemeanor for an employer to require that a polygraph be taken as

3. On appeal the Third Circuit would not rule that Pennsylvania recognizes a cause of action for wrongful discharge in retaliation for filing a workmen's compensation claim, but rather determined that even if Pennsylvania embraced the cause of action, the evidence was insufficient to satisfy the plaintiff's burden. 808 F.2d 1005 (3d Cir. 1987).

a condition of employment, indicated the type of "recognized facet of public policy" required by *Geary* and *Reuther*. Furthermore, reliance by the court upon the statutory prohibition as a declaration of public policy would support our view that *Geary's* recognition of *Frampton,* as a case where the mandate of public policy was clear and compelling, referred to the narrow holding therein regarding the statutory prohibition of use of a "device."

In *Novosel v. Nationwide Insurance Co., supra,* removal of an employee for his unwillingness to participate in the company's lobbying efforts was viewed as the right to political expression and association guaranteed under the First Amendment of the U.S. Constitution and Article I, section 7 of the Pennsylvania Constitution and thus entitled to protection.

Finally, in *Woodson v. AMF Centers Inc., supra,* an employee stated a cause of action for wrongful discharge when replaced for refusing to sell liquor to a visibly intoxicated person in violation of the Pennsylvania Liquor Code.

In contrast, no violation of a public policy was found in *Cisco v. United Parcel Services Inc.,* 328 Pa. Super. 300, 476 A.2d 1340 (1984) where an employee was discharged after being accused of theft and trespass in connection with his employment and was refused re-employment when acquitted of the charges;[4] *Rossi v. Pennsylvania State*

---

4. Although the court recognized a public policy expressed in the Criminal History Record Information Act, 18 Pa.C.S. §9125, that a criminal accusation is not a fair consideration by an employer in not hiring an individual, it was not a violation of public policy to discharge when the employer, for legitimate business reasons, could not risk even someone under suspicion of having committed theft and trespass when the nature of the business was to enter premises of others and deliver parcels.

*University,* 340 Pa. Super. 39, 489 A.2d 828 (1985), where an employee was discharged for complaining about financial waste in his department (alleged public policy to save tax dollars); in *McCartney v. Meadowview Manor Inc.,* 353 Pa. Super. 34, 508 A.2d 1254 (1986), where an employee was discharged for actively seeking a position with a competitor; in *Turner v. Letterkenny Federal Credit Union,* 351 Pa. Super. 51, 505 A.2d 259 (1985), where an employee was discharged because of deteriorating relations with employees under his supervision; in *Martin v. Capital Cities Media Inc.,* 354 Pa. Super. 198, 511 A.2d 830 (1986), where a newspaper employee was discharged for placing a commercial advertisement in a rival newspaper (alleged public policy was violation of Pennsylvania Constitution Article 1, sections 1 and 7); in *Betts v. Stroehmann Bros.,* 355 Pa. Super. 195, 512 A.2d 1280 (1986) where an employee was discharged even though he had done his job well (alleged public policy was the need to balance the interests of employers and employees); in *Gillespie v. St. Joseph's University,* 355 Pa. Super. 362, 513 A.2d 471 (1986), where false accusations of criminal behavior led to discharge; in *Marsh v. Boyle,* 366 Pa. Super. 1, 530 A.2d 491 (1987), where an employee claimed that every person has a right to earn a living in a job he chooses; in *Rinehimer v. Luzerne County Community College,* 372 Pa. Super. 480, 539 A.2d 1298 (1988), where a college president was discharged for insisting on audits which revealed illegal activities; in *Paul v. Lankenau Hospital,* 375 Pa. Super. 1, 543 A.2d 1148 (1988) where an employee is discharged for allegedly unauthorized removal of discarded hospital equipment (alleged public policy was the employer's violation of sections 2906 and 5108 of the Pennsylvania Crimes

Code); in *Scott v. Extracorporeal Inc.*, 376 Pa. Super. 90, 545 A.2d 334 (1988), where an employee was discharged for fighting on company property (alleged public policy was one's right to act in self-defense as articulated in section 505 of the Pennsylvania Crimes Code, 18 Pa.C.S. §505); in *Hineline v. Stroudsburg Electric Supply Company Inc.*, 384 Pa. Super. 537, 559 A.2d 566 (1989), where an employee was discharged for dismantling his employer's allegedly illegal video camera; and in *McGonagle v. Union Fidelity Corp., supra,* where general counsel for an insurance company was discharged for his refusal to approve mailings and other matters which he believed violated insurance laws of various states.

Turning specifically to the case sub judice, plaintiff alleges that discharge in retaliation for filing a claim under the Wage, Payment and Collection Act violates public policy. The act requires employers to notify employees of the rate of pay, time and place of payment, and requires employers to make wage payments on regular paydays. The act provides civil remedies for unpaid wages including penalties, attorneys' fees and liquidated damages, as well as criminal penalties.

We do not dispute the importance of one's right to be compensated for his labors, however, we cannot conclude that discharge under these circumstances is any more violative of public policy than the discharge for filing a workmen's compensation claim in *Dietz v. Round Hill Foods Inc., supra*. There is no constitutional right being affected, the employee was not required to violate the criminal law, nor does the act proscribe discharge of an employee seeking the benefit of the act.

In this context employees should look to the legislature, in its wisdom, to offer a solution. The

exercising of judicial restraint in this area is appropriate because of an important counterbalancing public policy that the employer be master of his business. The legislature is best equipped to balance the competing equities.

We therefore conclude that plaintiff has failed to state a cause of action.

Accordingly, we enter the attached

## ORDER OF COURT

And now, October 18, 1989, defendants' motion for partial summary judgment is hereby granted and count III of plaintiff's complaint is dismissed.