IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy S. Kearney, PA-C,　　　　　　:
　　　　　　　Petitioner　　　　　　:
　　　　　　　　　　　　　　　　　　:　No. 1675 C.D. 2016
　　　　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:　Argued:　September 11, 2017
Bureau of Professional and　　　　　　:
Occupational Affairs,　　　　　　　　:
State Board of Medicine,　　　　　　　:
　　　　　　　Respondent　　　　　　:


BEFORE:　　HONORABLE MARY HANNAH LEAVITT, President Judge
　　　　　　HONORABLE PATRICIA A. McCULLOUGH, Judge
　　　　　　HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY
JUDGE McCULLOUGH　　　　　　　　　　　　FILED:　October 16, 2017


　　　　　Timothy S. Kearney (Petitioner) petitions for review of the September 13, 2016 order of the Department of State, State Board of Medicine (Board), denying his petition for reinstatement of his license to practice as a physician assistant (PA) in Pennsylvania.　We reverse and remand.

　　　　　On October 22, 1999, Petitioner was issued a license to practice as a PA in Pennsylvania and last practiced as a PA on or about March 18, 2010, when he voluntarily admitted himself into the Clearbrook Treatment Center (Clearbrook) for drug addiction issues.　(Hearing Examiner's Findings of Fact at Nos. 4, 8.)

　　　　　Petitioner's addiction originated as a result of chronic back problems when he was nineteen years old, for which he underwent two lumbar surgeries and was prescribed a narcotic pain medication, Hydrocodone.　Around the time Petitioner

developed his addiction, he was diagnosed with depression. Ultimately, Petitioner began diverting pain medications from his work for personal use, illicitly consuming Oxycontin and using Fentanyl patches. Petitioner was suspended by his employer when it discovered the same.[1] (Hearing Examiner's Findings of Fact at Nos. 21-22, 24-26.)

On August 16, 2011, Petitioner pled guilty to one felony count of obtaining a controlled substance by misrepresentation or fraud in violation of section 13(a)(12) of the Controlled Substance, Drug, Device and Cosmetic Act (CSA). Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §780-113(a)(12).[2]

In his written guilty plea colloquy, Petitioner responded "Yes" when asked whether he understood that, by pleading guilty, he specifically admitted to doing the criminal acts for which he was charged. As part of the plea agreement, the Commonwealth decided to *nolle pros* all of the remaining counts in the criminal

---

[1] Petitioner admitted himself into Clearbrook for drug addiction shortly after he was suspended by his employer. Petitioner was diagnosed with alcoholism and polysubstance abuse, and received twenty-eight days of in-patient drug therapy and treatment at Clearbrook. During his treatment, Petitioner received daily group and individual counseling. On May 10, 2010, Petitioner contacted the Physicians' Health Programs (PHP) and, after his discharge from Clearbrook, entered into a five-year agreement with PHP, requiring that Petitioner: submit to toxicology testing; submit quarterly reports from his therapist and PHP monitor; submit documentation of 12-Step meeting attendance; and make monthly check-in calls to the PHP office. (Hearing Examiner's Findings of Fact at Nos 26-31.)

[2] Petitioner also pled guilty to one count of insurance fraud, graded as a felony in the third-degree. *See* section 4117 of the Crimes Code, 18 Pa.C.S. §4117. However, this count was immaterial to (in fact, was not mentioned in) the Board's decision, most likely because the crime does not fall under the CSA. Because this particular crime had no bearing on the Board's analysis of the legal issue presented, we do not address it apart from the CSA count. In any event, we note that our reasoning applies equally to all the crimes to which Petitioner originally pled guilty.

information.[3]    On November 1, 2011, the Court of Common Pleas of Lackawanna County (trial court) sentenced Petitioner to ten months of house arrest along with a consecutive term of five years of probation.  (Reproduced Record (R.R.) at 19a, 31a, 34a.)

By order dated December 22, 2011, the Board automatically suspended Petitioner's license to practice as a PA for no less than ten years pursuant to section 40(b) of the Medical Practice Act of 1985 (Act).[4]  The Board based its decision on Petitioner's guilty plea, wherein he admitted that he committed a felony violation of the CSA.  (Hearing Examiner's Findings of Fact at Nos. 9-11, 38; R.R. at 15a-17a.)

Meanwhile, in December 2011, the trial court effectively vacated and/or modified Petitioner's sentence.[5]  In lieu of the prior sentence, Petitioner was enrolled in the Lackawanna County Adult Treatment Court (Drug Court Program).  Per the terms of the Drug Court Program, Petitioner was required to submit to random drug screening; undergo counseling; meet with his probation officer on a weekly basis; and attend weekly meetings with the program team, including the judge, probation officer, and drug and alcohol counselors.  Following his graduation from the Drug Court Program in approximately December 2013, Petitioner was subjected to six months of criminal probation.  (Hearing Examiner's Findings of Fact at Nos. 38-40.)[6]

---

[3] A *nolle prosequi* is a voluntary withdrawal by a prosecuting attorney of charges in a particular criminal bill or information and acts neither as an acquittal nor a conviction.  *Passel v. Department of Transportation, Bureau of Driver Licensing*, 928 A.2d 381, 383-84 (Pa. Cmwlth. 2007).

[4] Act of December 20, 1985, P.L. 457, *as amended*, 63 P.S. §422.40(b).

[5] It is not clear from the record through what procedure or in what proceeding the trial court did so.

[6] On June 18, 2012, after Petitioner failed to request a hearing regarding his automatic suspension, the Board issued an amended final order indefinitely suspending Petitioner's license

3

On June 20, 2014, Petitioner appeared before the trial court for formal disposition of his motion to withdraw the August 16, 2011 guilty plea and request to be admitted into the Drug Court Program. On behalf the Attorney General's Office, the District Attorney stated that the Commonwealth had no objection to the motion. (R.R. at 3a-6a.) When asked by the presiding judge in the matter whether he committed the crime of which he was charged, Petitioner responded "Yes." (R.R. at 3a-4a; Hearing Examiner's Findings of Fact at No. 15.) The trial court then explained that Petitioner had completed all the terms and conditions of the Drug Court Program and had served his consecutive term of six-months of probation without incident. The trial court said that Petitioner was "entitled to have the case dismissed," dismissed the case on the record, and informed Petitioner that "upon completion of the adequate terms the case will also be expunged." (R.R. at 5a-6a.)

By order dated that same day, the trial court dismissed Petitioner's criminal charges based upon his successful completion of the Drug Court Program and probationary term. (Hearing Examiner's Findings of Fact at No. 14.)

By letter filed December 29, 2014, Petitioner requested that the Board reinstate his license given the extensive addiction treatment he received, the dismissal of his criminal charges, and his improved understanding of addiction and the treatment it requires. The matter was assigned to a Hearing Examiner, who conducted a hearing and issued a proposed adjudication and order.

---

based on his guilty plea. Pursuant to the amended final order, Petitioner was permitted to petition for reinstatement of his license after ten years from the date of his conviction. As a condition for reinstatement, the Board directed that Petitioner must establish that he is capable of practicing as a PA with reasonable skill and safety, and that he has completed ten years of rehabilitation and sustained recovery. (Hearing Examiner's Findings of Fact at Nos. 12-13; R.R. at 11a-12a.)

4

By proposed order dated April 27, 2015, the Hearing Examiner recommended denying Petitioner's appeal and maintaining the indefinite suspension of his license. The Hearing Examiner concluded that Petitioner's "admissions of guilt" in his written plea colloquy and statement before the presiding judge during the June 20, 2014 hearing constituted "convictions" under the Act. As such, the Hearing Examiner found that Petitioner was precluded from petitioning the Board for reinstatement of his PA license pursuant to section 43(b) of the Act because the ten-year period had not yet elapsed from the date of his conviction. Notwithstanding this determination, the Hearing Examiner also concluded that "Petitioner has satisfied his burden of establishing that he is capable of resuming competent practice as a [PA] with reasonable skill and safety to patients, subject to monitoring by the [Physician's Health Programs], as the PHP deems necessary." (Hearing Examiner's Conclusions of Law at No. 8; *see supra* n.1.)

By final order dated September 13, 2016, the Board upheld the Hearing Examiner's decision, denied Petitioner's petition for reinstatement, and determined that his license shall remain indefinitely suspended. In doing so, the Board basically followed the reasoning of the Hearing Examiner, concluding that Petitioner had a "conviction" under the Act and the CSA. Consequently, the Board found it irrelevant to decide, at that point in time, whether Petitioner was capable of resuming competent practice as a PA, tallying up his ineligibility for reinstatement until at least 2021. (Board's decision at 2-9; *see supra* n.6.)

On appeal to this Court,[7] Petitioner argues that the Board erred in interpreting the term "conviction" and its subcomponent phrase "admission of guilt" in

---

[7] Our scope of review of the Board's order is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact

5

section 40(b) of the Act. Petitioner contends the Board's use of the information in his written guilty plea colloquy and statement at the hearing was erroneous and that the Board, in essence, created a "conviction" where none had occurred. According to Petitioner, the Board misapprehended the fact that his criminal charges were dismissed and the record of the criminal matter had later been expunged, averring that, once his criminal record had been expunged, he returned to "pre-conviction" status.[8] Petitioner also posits that the Board's decision undermines the rehabilitative nature and goals of the Drug Court Program.

From a broad perspective, our goal here is to discern the meaning of terms and phrases in statutes to decide whether Petitioner's acceptance into – and successful completion of – the Drug Court Program constituted an "admission of guilt" and therefore a "conviction" under the Act, especially considering that the trial court expunged the underlying criminal record.[9]

---

are supported by substantial evidence. *Barran v. State Board of Medicine*, 670 A.2d 765, 767 n.3 (Pa. Cmwlth. 1996).

[8] In its decision, the Board took for granted that Petitioner's criminal record would be expunged, even though it was not at the time of the hearing, and focused its analysis solely on the legal effect of Petitioner's statements in the criminal proceedings, concluding that they constituted "admissions of guilt." (Board's decision at 7-8.) We do the same here. Nonetheless, we note that Petitioner has represented, both in his brief and at oral argument, that his record was expunged in November 2016 and, furthermore, that a search on the web portal for Pennsylvania's Unified Judicial System reveals that there is no criminal history information available for his case's docket number. *Cf. Commonwealth v. Benn*, 675 A.2d 261, 264 n.1 (Pa. 1996) ("The Commonwealth now claims that the record was not in fact expunged and that appellant's prior offense became known through a standard criminal records check. Even assuming, arguendo, that there was a failure to adequately expunge the record, it is clear that expunction was statutorily required.").

[9] In all matters involving statutory interpretation, we apply the principles of the Statutory Construction Act of 1972, 1 Pa.C.S. §§1501-1991. *See McGrory v. Department of Transportation*, 915 A.2d 1155, 1158 (Pa. 2007).

6

The Act provides, in pertinent part, that "[a] license or certificate issued under this act shall automatically be suspended upon . . . conviction of a felony under the act . . . known as [t]he [CSA] . . . ." 63 P.S. §422.40(b). Section 40(b) of the Act clarifies that "[a]s used in this section, the term 'conviction' shall include a judgment, an admission of guilt or a plea of *nolo contendere*." *Id*.; *see also* section 2 of the Act, 63 P.S. §422.2 (defining "conviction" as "[a] judgment of guilt, an admission of guilt or a plea of *nolo contendere*.").[10]

The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly and, generally, the plain language of a statute is the best indication of the General Assembly's intent. *See* 1 Pa.C.S. §1921(a). While the Act provides for automatic suspension of a license for a felony "conviction" under the CSA, the Act incorporates the CSA by express reference. By all reasonable means, this Court should unify two or more statutes in a cohesive and consistent fashion and avoid interpreting one statute in a manner that repeals or is otherwise incongruous with another statute. *See* 1 Pa.C.S. §§1932, 1971(c).

Under section 17 of the CSA, a trial court "may place a person on probation without verdict if the person pleads *nolo contendere* or guilty to any nonviolent offense under [the CSA] and the person proves he is drug dependent." 35 P.S. §780-117. Importantly, that section also states that "[u]pon fulfillment of the terms and conditions of probation, the court shall discharge such person and dismiss the proceedings against him," adding that the "dismissal shall be without adjudication of guilt and *shall not constitute a conviction for any purpose whatever* . . . ." 35 P.S.

---

[10] Section 43 of the Act further states that "[a]ny person whose license, certificate or registration has been suspended or revoked because of a felony conviction under the [CSA] . . . may apply for reinstatement after a period of at least ten years has elapsed from the date of conviction." 63 P.S. §422.43.

§780-117(3) (emphasis added). Section 19 of the CSA further declares that records of arrest or prosecution under the Act will be expunged. When a court orders expungement, the records "shall not . . . be regarded as an arrest or prosecution for the purpose of any statute or regulation or license or questionnaire or any civil or criminal proceeding or any other public or private purpose." 35 P.S. §780-119(b).

As a surface matter, we observe that a plain reading of the statutes indicates that, while the Act includes an "admission of guilt" as a subpart of the definition of a "conviction," the CSA commands that a final disposition of "probation without verdict" does not constitute a "conviction." Under the procedure in section 17 of the CSA for a "probation without verdict," an individual's "plea" is, in essence, held in abeyance, or not accepted, until there is a final determination by the court as to whether the individual has satisfactorily completed the terms and conditions of probation; if the individual does so, the trial court dismisses the charges and there is no verdict or finding of guilt in the matter. Consequently, in order to afford the phrase "for any purpose whatever" in section 17 of the CSA its full linguistic effect, we can reasonably interpret it to mean that the oral and written statements made to a trial court in connection with a "probation without verdict" cannot be a considered a "conviction" for purposes of section 40(b) of the Act. To be sure, this construction is the only way in which the term "conviction" in the Act can be harmonized with the same term in the CSA. Indeed, following dismissal of the underlying charges, the criminal record is expunged pursuant to section 19 of the CSA, and the criminal record cannot be used at all in an administrative licensing matter – not even as proof that the individual was arrested or prosecuted.

In some statutes, our General Assembly, without using the word "conviction," has expressly included the phrase "probation without verdict" to describe

8

the basis upon which a licensing board can refuse, suspend, or revoke a professional license.[11]  However, the General Assembly did not insert this or similar language in the Act.  Nor did the General Assembly inject "probation without verdict" alongside "admission of guilt" in the Act's definition of a "conviction."  Inferentially, the divergence in word usage among the CSA, the Act, and other similar statutes is indicative of the General Assembly's desire to conceptually separate an "admission of guilt" from a "probation without verdict," suggesting to courts that the two should not be perceived or linked as being one and the same.  *See Fletcher v. Pennsylvania Property & Casualty Insurance Guaranty Association*, 985 A.2d 678, 684 (Pa. 2009); *Kirkpatrick v. Bureau of Professional & Occupational Affairs, State Board of Barber Examiners*, 117 A.3d 1286, 1290-94 (Pa. Cmwlth. 2015).

On the whole, our precedent has clearly concluded as much.  *See Carabello v. Bureau of Professional Occupational Affairs*, *State Board of Pharmacy*, 879 A.2d 873, 875-76 (Pa. Cmwlth. 2005); *Warren County School District v. Carlson*, 418 A.2d 810 (Pa. Cmwlth. 1980); *see also Klinger v. Department of Transportation, Bureau of Driver Licensing*, 856 A.2d 280, 282-84 (Pa. Cmwlth. 2004).

For example, in *Carlson*, a teacher entered a plea of *nolo contendere* to charges that he possessed drugs in violation of the CSA, a plea that has "the same legal effect as a plea of guilty in the criminal proceedings in which it is entered."  418 A.2d at 813.  The criminal case proceeded under the provisions of section 17 of the CSA,

---

[11] *See* section 5(a)(2) of the Pharmacy Act, Act of September 27, 1961, P.L. 1700, *as amended*, 63 P.S. §390-5(a)(2) (stating, in pertinent part, that the licensing board has the power to refuse, revoke, or suspend the license of any pharmacist upon proof satisfactory to it that the pharmacist "[h]as been found guilty, pleaded guilty, entered a plea of *nolo contendere*, or has received probation without verdict, disposition in lieu of trial or an Accelerated Rehabilitative Disposition"); section 14(a)(5) of the Professional Nursing Law, Act of May 22, 1951, P.L. 317, *as amended,* 63 P.S. 63 P.S. §224(a)(5) (same).

and the teacher eventually had his criminal record expunged. Although this Court was convinced that the school district properly dismissed the teacher for immorality pursuant to sections 1122 and 1129 of the Public School Code, Act of March 10, 1949, P.L. 30, *as amended* 24 P.S. §§11-1122 and 11-1129, we pointed to the special nature and characteristics of the CSA and the probation without a verdict mechanism. More specifically, we explained that when the charges are dismissed following compliance with probation, "no judgment is entered, notwithstanding the fact that the defendant is placed on probation, an act which normally constitutes a sentence, *i.e.* a judgment." 418 A.2d at 813. On this basis, we determined that evidence of the teacher's plea of *nolo contendere* was inadmissible, and further reasoned that, as a result of the expungement, there was "no criminal record" upon which the trier of fact could determine that the teacher engaged in conduct of a criminal nature. *Id.* Accordingly, this Court held that the teacher could not be discharged from his employment with the school district as a matter of law.[12]

In *Klinger*, the Department of Transportation suspended a licensee's driving privileges under section 1532(c) of the Vehicle Code, 75 Pa.C.S. §1532(c),

---

[12] The facts in *Carlson* were substantially reprised in *Carabello*, but this time the State Board of Pharmacy automatically suspended a pharmacist from practice pursuant to a section of the CSA that provided for such "when the person has pleaded guilty or *nolo contendere* or has been convicted of a misdemeanor under this act." 879 A.2d at 874 (quoting section 23(c) of the CSA, 35 P.S. §780-123(c)). In overturning the Board's decision, we pronounced that,

> because no judgment had been entered on [the pharmacist's] plea of *nolo contendere,* it was error for the Board to admit the plea as evidence at its hearing. Moreover, because [the pharmacist] established at the hearing that his criminal record had been expunged the previous day, as in *Carlson,* the Board had no evidence before it to support a conclusion that [the pharmacist] pled *nolo contendere* to a misdemeanor drug offense.

879 A.2d at 876.

because he was "convicted" of an offense under the CSA. In commenting on sections 17 and 19 of the CSA, this Court provided some descriptive elucidation: "[T]he legislature established a 'unique' procedure in which, essentially, the plea of guilty is held in abeyance, to be discarded if probation is satisfied, or to be used as a basis for entering judgment if the terms of probation are violated." 856 A.2d at 285. We also reiterated that once a defendant successfully completes probation under section 17 of the CSA, "his record must be expunged and it cannot be regarded for any purpose." 856 A.2d at 284.

At bottom, the underlying proposition to be derived from this decisional law is as follows. Pursuant to section 17 of the CSA, when an individual enters pleas of guilt or *nolo contendere* in the face of a CSA charge, the charge is held in a state of abeyance, and if an individual complies with the terms and conditions of the imposed rehabilitative probation, the charge is dismissed and the criminal record expunged – the end result being that the proverbial slate is completely and unconditionally wiped clean. Stated differently, the entire record of the criminal proceedings cannot be considered by a state occupational licensing board, let alone be deemed as a "conviction" by that board, regardless of whether something in the record can be viewed as an admission of guilt, or anything else for that matter. *See also Commonwealth v. Benn*, 675 A.2d 261, 263-64 (Pa. 1996).

Although sections 17 and 19 of the CSA may not be fully applicable to Petitioner, as a matter of statutory construction, these provisions and the case law that has developed around them illustrate what a "conviction" is and is not for purposes of the Act and, overall, are instructive in that they provide ample guidance in addressing the legal issue presented.

11

Here, following Petitioner's guilty plea to a violation of the CSA, the trial court permitted Petitioner to enter the Drug Court Program. In making this modification, the trial court effectively vacated its previous sentence, *cf. Commonwealth v. Colding*, 393 A.2d 404, 407-08 (Pa. 1978), and imposed upon Petitioner a form of intermediate punishment, consisting of a mix of supervised treatment and probation.[13] All across Pennsylvania, programs known as "drug courts" or "problem solving courts" are being implemented at the county level, namely through an accreditation program approved by our Supreme Court in August 1, 2011, and revised in May 7, 3015.[14] The court system in Lackawanna County established an "adult drug court" in 2000, and since then, it has received official accreditation.[15] In Lackawanna County,

> This Problem Solving Court is, "designed to rehabilitate non-violent offenders through a judicially supervised program focused on treatment, accountability, and responsibility." The Program targets offenders with drug and/or alcohol issues. Offenders meet with the Court Treatment Team for a minimum of eighteen (18) months. The Court Treatment Team includes the Judge, District Attorney's Office, Public

---

[13] *See* generally sections 9763(a)-(c), 9801-9813 of the Judicial Code, 42 Pa.C.S. §§9763(a)-(c), 9801-9813.

[14] *See Accreditation Program Adult Drug and DUI Courts*, Supreme Court of Pennsylvania, Administrative Office of Pennsylvania Courts Problem Solving Court Program Office, located at http://www.pacourts.us/assets/files/setting-2541/file-2071.pdf?cb=6097a3 (last viewed September 21, 2017); *see generally* the webpage created by The Unified Judicial System of Pennsylvania discussing Drug Courts and the links contained therein, located at http://www.pacourts.us/judicial-administration/court-programs/drug-courts (last viewed September 21, 2017).

[15] http://www.pacourts.us/assets/files/setting-2502/file-3585.pdf?cb=26744c (last viewed September 21, 2017).

12

Defender's Office, Adult Probation Department, and treatment providers. Offenders participating in this Program are required to have frequent contact with the Treatment Team and frequent drug/alcohol screening. The offender pleads guilty but sentencing is deferred pending successful completion of the Program. Upon graduation the charges are dismissed.

Lackawanna County Probation Department, Treatment Court, at 1.[16]

Not only was the trial court's disposition in Petitioner's case rehabilitative in nature, and designed to settle the matter without criminal sanctions or consequences, it mirrored the procedure for probation without verdict embodied in section 17 of the CSA. As detailed in many decisions from our courts, the defining procedural traits of probation without verdict are the entry of a plea, deferral of the charges, and then probation, dismissal, and expungement of the charges. *See, e.g., Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educational Support Personnel Association (PSEA-NEA)*, 939 A.2d 855, 858 (Pa. 2007); *Commonwealth v. Benn*, 675 A.2d 261, 231-63 (Pa. 1996); *New Kensington-Arnold School District v. New Kensington-Arnold Education Association*, 140 A.3d 726, 729 and n.7 (Pa. Cmwlth. 2016). Likewise, here, Petitioner withdrew his guilty plea, thereby rendering it void as a matter of law, *cf. Commonwealth v. Forbes*, 299 A.2d 268, 270-71 (Pa. 1973); Pa.R.Crim.P. 591; the trial court dismissed the charges against Petitioner; the case was resolved without an adjudication of guilt; and Petitioner's criminal record was later expunged.[17]

---

[16] http://www.pbpp.pa.gov/About%20PBPP/Documents/County%20PP%20Programs%20and%20Services/35%20-%20LACKAWANNA%20COUNTY.pdf (last viewed September 21, 2017).

[17] Because Petitioner filed a motion to withdraw his guilty plea, and the trial court granted that motion, there is no guilty plea of record in this case like there was in *Herberg v. State Board of Medical Education and Licensure*, 442 A.2d 411, 413 (Pa. Cmwlth. 1982) ("[A]n admission of guilt – such as the guilty pleas here –constitutes a conviction"). Consequently, we circumscribe our

In this background, where Petitioner's case was the functional equivalent of a probation without a verdict, we are reluctant to conclude that what Petitioner said in connection with the criminal proceedings and wrote in his guilty plea colloquy were "admissions of guilt" and, correspondingly, a "conviction" under section 40(b) of the Act. Indeed, we think it makes little sense, and seems somewhat anomalous, for us to find that an individual tendered an admission of guilt to a crime under the CSA, when the CSA charge was subsequently dismissed and the record of any such charge was expunged. Absent some explicit statutory approval for the use of expunged records, it was our impression that, after the trial court expunged Petitioner's criminal record, it is as if the entire matter "ceased to exist" and never happened in the legal sense. *See also Carabello*, 879 A.2d at 876 n.7 (applying *Carlson*: "In other words, as a matter of law, the expunged criminal record did not exist."); *cf.* section 9111 of the Criminal History Record Information Act (CHRIA), 18 Pa.C.S. §9111 (defining "expunge," in one part, as "[t]o remove information so that there is no trace or indication that such information existed.").

In this regard, Petitioner's program of intermediate punishment in the Drug Court Program is akin to the pretrial diversionary program known as Accelerated Rehabilitative Disposition (ARD) that is available for offenders of Pennsylvania's drinking and driving laws. Established in 1972, the ARD program was designed to

holding in *Herberg* to its peculiar facts, *i.e*, in cases where a judgment of sentence is entered following a traditional guilty plea that is not subsequently withdrawn and the guilty plea is memorialized forever as an on-the-record admission of guilt.

As explained throughout our decision, and in light of the fact that Petitioner's criminal record was expunged, the instant matter is much more analogous to another situation noted in *Herberg*, that is, where "a felony conviction is overturned on appeal" – a point at which we said that a "petitioner may . . . initiate proceedings to have his license reinstated." *Id.*

14

solve cases "by programs and treatments rather than by punishment" and it was, and continues to be, "attractive to many defendants because it provides them with an opportunity to earn a clean record." *Commonwealth v. Armstrong*, 434 A.2d 1205, 1208 (Pa. 1981) (citations and internal quotation marks omitted). For these reasons, our Supreme Court has held that "to refuse expungement to those who successfully complete ARD" would not only "seriously deter participation in the program," but also "undermine its rehabilitative purposes." *Id.* In a subsequent series of decisions, our Sister Court has explained that admission into an ARD program "places the criminal proceedings in abeyance," so that a defendant can rehabilitate himself "without the necessity of trial and conviction," and that successful completion of ARD "is not equivalent to a conviction under any circumstance." *Commonwealth v. Brown*, 673 A.2d 975, 979 (Pa. Super. 1996) (collecting cases; citations omitted); *accord Commonwealth v. Hoover*, 16 A.3d 1148, 1149-50 (Pa. Super. 2011). The exception to this rule is when the General Assembly, through specific text, has expressed its intent to incorporate ARD into the statutory definition of a "conviction." *Whalen v. Department of Transportation, Bureau of Driver Licensing*, 32 A.3d 677, 681-82 (Pa. 2011). But that is not the case here.

Even if the oral and written statements Petitioner made in connection with the criminal proceedings could be designated as "admissions of guilt" and, consequently, a "conviction" for purposes of the Act, another Pennsylvania statute, CHIRA, would militate strongly against – if not outright displace – such a construction. Much like the nullifying legal effect that sections 17 of 19 of the CSA has on a disposition of probation without verdict, provisions of CHIRA protect and curtail the use of an expunged criminal record.

Where, as here, the underlying charges are dismissed, or there is an acquittal, for example, section 9122(a)(2) of CHIRA states that the "[c]riminal history record information shall be expunged . . . when . . . a court order requires that such *nonconviction* data be expunged." 18 Pa.C.S. §9122(a)(2) (emphasis added). Although section 9112(c) of CHIRA permits a court, district attorney, and the state police to retain copies of expunged criminal records from pretrial diversionary programs or other probationary programs, the copies "shall be used *solely* for the purposes of determining subsequent eligibility for such programs, identifying persons in criminal investigations or determining the grading of subsequent offenses." 18 Pa.C.S. §9122(c) (emphasis added). Ultimately, these statutory provisions appear to illuminate our General Assembly's intention to immunize an expunged record from being classified as a "conviction."

More importantly, section 9124 of CHIRA provides:

§ 9124. Use of records by licensing agencies.

(a) State agencies— *Except as provided by this chapter*, *a board*, commission or department of the Commonwealth, when determining eligibility for licensing, certification, registration or permission to engage in a trade, profession or occupation, *may consider convictions* of the applicant of crimes but the *convictions* shall not preclude the issuance of a license, certificate, registration or permit.

(b) *Prohibited use of information*— The following information *shall not be used in consideration* of an application for a license, certificate, registration or permit:

(1) Records of arrest if there is no conviction of a crime based on the arrest.

(2) *Convictions which have been annulled or expunged*.

(3) Convictions of a summary offense.

16

(4) Convictions for which the individual has received a pardon from the Governor.

(5) Convictions which do not relate to the applicant's suitability for the license, certificate, registration or permit.

(c) *State action authorized*— Boards, commissions or departments of the Commonwealth authorized to license, certify, register or permit the practice of trades, occupations or professions may refuse to grant or renew, or *may suspend or revoke* any license, certificate, registration or permit for the following causes:

(1) Where the applicant has been *convicted* of a felony.

(2) Where the applicant has been *convicted* of a misdemeanor which relates to the trade, occupation or profession for which the license, certificate, registration or permit is sought.

18 Pa.C.S. §9124.

Recognizing the reach and applicability of this statutory proviso to "licensing agencies," this Court has already held that, independent of other statutes, section 9124(c)(1) of CHIRA authorizes certain licensing boards to suspend or revoke a practitioner's license for the conviction of a felony. *Cannizzaro v. Department of State, Bureau of Professional and Occupational Affairs*, 564 A.2d 564, 567 (Pa. Cmwlth. 1989). Relatedly, a Federal District Court for the Eastern District of Pennsylvania has concluded that section 9124 also limits these same licensing boards' power to use a criminal record that has been expunged when issuing administrative adjudications. *Foxworth v. Pennsylvania State Police*, 402 F. Supp. 2d 523, 543-44 (E.D. Pa. 2005), *aff'd* 228 Fed. App'x 151, 154 (3d Cir. 2007) (unpublished) (collecting and discussing Pennsylvania case law: "[T]he statute sets the boundaries of use of criminal record information by those boards, commissions or departments of

the Commonwealth which are specifically authorized to license the practice of professions or occupations."). In affirming this decision, the United States Court of Appeals for the Third Circuit aptly observed: "Section 9124 prohibits government agencies from denying 'an application for a license, certificate, registration or permit' where there has been no conviction or on the basis of annulled or expunged convictions." *Foxworth v. Pennsylvania State Police*, 228 Fed. App'x 151, 154 (3d Cir. 2007) (unpublished). Upon our own assessment of the plain language of CHIRA, we agree with these courts that section 9124(b) imposes such a restraint on licensing agencies.

As discussed previously, it is our job to preserve, if reasonably possible, consistency among statutes, while giving full effect to the language of each and every one of them. That can be accomplished here. Assuming that Petitioner tendered "admissions of guilt" during the criminal proceedings, and obtained a "conviction" under the Act, section 9127 nonetheless bars the Board from considering Petitioner's statements in the written guilty plea colloquy and during the June 20, 2014 hearing. Simply put, this is because the source of these declarations are from a criminal record that has been expunged, and subsection (b)(2) prohibits a licensing board from considering a "conviction" that has been "expunged." 18 Pa.C.S. §9124(b)(2). Since the Board rested its decision exclusively on a criminal record that no longer exists and cannot be used to deny reinstatement of Petitioner's license, we hold that the Board committed an error of law and reverse its determination.

In reaching an opposite conclusion, the Hearing Examiner placed heavy reliance on *Boulis v. State Board of Chiropractic*, 729 A.2d 645 (Pa. Cmwlth. 1999), a case that is factually similar but legally inapposite. There, this Court held that incriminating statements made by a chiropractor, during a 1994 resentencing hearing

18

to obtain a deferred sentence and twenty-five years of probation under Georgia's first offender program, were sufficient to uphold his license suspension because they constituted admissions of guilt. However, this holding was contextually qualified by our conclusion that the chiropractor's "conviction existed as a judgment prior to his first offender sentence and remains in effect in Georgia until [he] fulfills the terms of his probation," *id.* at 648, which would have been eighteen years (or more) at the time of our decision. We can and do distinguish *Boulis* based on the simple facts that, unlike the situation in that case, Petitioner here has completed his probationary term, and the trial court has dismissed the charges and expunged the criminal record.

Therefore, for the above-stated reasons, we reverse the Board's order and remand for the Board to decide whether the Hearing Examiner erred in determining that Petitioner has established that he is now fit and capable of competent practice as a PA with reasonable skill and safety.

_____
PATRICIA A. McCULLOUGH, Judge

19

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy S. Kearney, PA-C,       :
          Petitioner      :
                          :   No. 1675 C.D. 2016
          v.            :
                          :
Bureau of Professional and     :
Occupational Affairs,           :
State Board of Medicine,       :
          Respondent   :

## ORDER

AND NOW, this 16th day of October, 2017, the September 13, 2016 order of the Department of State, State Board of Medicine (Board) is reversed. The case is remanded to the Board for further proceedings as provided for in this opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge