IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Rebecca C. Jones, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1690 C.D. 2017 |
| | : | ARGUED: September 12, 2018 |
| Pennsylvania Department of | : | |
| Education, | : | |
| Respondent | : | |

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                                          FILED:  October 4, 2018

Petitioner Rebecca C. Jones (Petitioner), a 40-year-old art teacher employed by the School District of Philadelphia (School District), petitions for review of an Order issued by the Commonwealth of Pennsylvania's Professional Standards and Practices Commission (Commission) on October 24, 2017. Therein, the Commission denied Petitioner's exceptions to Commission Hearing Officer Marc A. Moyer's March 3, 2017 Proposed Report, as well as Petitioner's Amended Motion to Dismiss All Charges Based on Expungement (Amended Motion to Dismiss). In addition, the Commission directed the Pennsylvania Department of Education (Department) to revoke Petitioner's educator certification and employment eligibility pursuant to the Educator Discipline Act,[1] due to Petitioner's guilty plea for theft by deception conviction in New Jersey. Petitioner had obtained

_____

[1] Act of December 12, 1973, P.L. 397, *as amended*, 24 P.S. §§ 2070.1a-2070.18c.

"an Instructional I Pennsylvania teaching certificate in the area of Art K-12 which was issued by the Department on July 1, 2004." Proposed Report at 1. We affirm.

In 2011, while working as a full-time employee at a "Gap" store in Moorestown, New Jersey, Petitioner was arrested for stealing a total of $481.57 in Gap funds, which she had done by creating fake gift receipts and then exchanging some for cash and crediting the dollar value of others to her personal credit card. Commission's Notice of Charges at 1 & Ex. 1; Petitioner's Br. at 5. On April 26, 2011, Petitioner pled guilty to a misdemeanor-graded theft by deception[2] in the Superior Court of New Jersey, Chancery Division – Criminal Part, Burlington County (Superior Court of New Jersey). Petitioner was sentenced that same day, receiving a fine of $1139.57 for costs, fines, and restitution, and "ordered not to return to the Gap store in Moorestown." Commission's Notice of Charges, Ex. 1.

---

[2] Pursuant to the relevant New Jersey statute, N.J.S. 2C:20-4:

> A person is guilty of theft if he purposely obtains property of another by deception. A person deceives if he purposely:
>
> > a. Creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind, and including, but not limited to, a false impression that the person is soliciting or collecting funds for a charitable purpose; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;
> >
> > b. Prevents another from acquiring information which would affect his judgment of a transaction; or
> >
> > c. Fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship.
>
> The term "deceive" does not, however, include falsity as to matters having no pecuniary significance, or puffing or exaggeration by statements unlikely to deceive ordinary persons in the group addressed.

Approximately 16 months later, on August 23, 2012, Petitioner applied for a teaching position with the School District. A criminal background check was conducted as part of the application process. Proposed Report at 6. This background check turned up Petitioner's theft by deception conviction, leading the School District to eventually hold a disciplinary hearing on January 23, 2014. *Id.* at 9.[3] Inexplicably, the School District has yet to issue a formal decision regarding this hearing, despite the fact that it occurred nearly five years ago.

In January 2014, the Department notified Petitioner that the Department had lodged a misconduct complaint against her due to her theft by deception conviction. *Id.* Nearly two years later, on December 18, 2015, the Department filed a Notice of Charges, informing Petitioner that it intended to seek revocation of her educator certification and employment eligibility, as required by Section 9.2 of the Educator Discipline Act, since her conviction was for a crime of moral turpitude. Notice of Charges at 1-4. Section 9.2 states, in relevant part,

> (a) The [C]ommission shall . . . [d]irect the [D]epartment to revoke the certificate and employment eligibility of an educator who has been convicted of a crime set forth in section 111(e)(1) through (3) of the "Public School Code of 1949,"[4] a crime involving moral turpitude, or the attempt, solicitation or conspiracy to commit any crime set forth in this section upon the filing of a certified copy of the verdict or judgment or sentence of the court with the commission. The [C]ommission shall direct the department to immediately reinstate a certificate and

---

[3] There is nothing in the record that accounts for why so much time elapsed between the background check and the School District taking action, but this delay seems to have stemmed from the School District's baffling tardiness in reviewing the results of the background check and Petitioner failing to proactively inform the School District about either the results of the background check or the underlying conviction itself. *See* N.T., 9/21/16 at 53-55 (transcript of Commission disciplinary hearing before Hearing Officer Moyer); Proposed Report at 7-9.

[4] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101-27–2702.

employment eligibility upon receipt of certified court documents establishing that the conviction was reversed. For purposes of this paragraph, the term "conviction" shall include a plea of guilty or nolo contendere.

24 P.S. § 2070.9b.

At the same time the Department lodged the Complaint, it also submitted a Motion for Summary Judgment to the Commission, arguing that there was no genuine issue of material fact as to whether such a sanction was warranted, due to Petitioner's criminal conviction. Motion for Summary Judgment at 1-5. Petitioner replied in opposition to the Motion for Summary Judgment denying the Department's factual allegations and legal conclusions, raising the defenses of estoppel and laches, and arguing that the Department's sought-after revocation was "an illegal ex post facto determination" that violated both her procedural and substantive due process rights. Reply to Motion for Summary Judgment at 1-4.

Petitioner and the Department appeared before Hearing Officer Moyer on September 21, 2016, in order to address the Department's Motion for Summary Judgment. At this hearing, Petitioner and the Department presented evidence and testimony regarding the propriety of revoking Petitioner's educator certification and employment eligibility. Following the hearing, both parties submitted post-hearing briefs. Proposed Report at 3. Hearing Officer Moyer issued his Proposed Report on March 3, 2017, ruling that Petitioner's theft by deception conviction was a crime of moral turpitude and that she had "failed to sustain her burden of proving the merits of her affirmative defenses[,]" concluding on this basis that "the Commission is statutorily required to direct the Department to revoke [Petitioner's] teaching

4

certificate and employment eligibility in accordance with [Section 9.2 of the Educator Discipline Act]." *Id.* at 10-11, at 31.[5]

On March 30, 2017, Petitioner filed exceptions to the Proposed Report and requested oral argument before the Commission,[6] to which the Department responded in opposition on April 14, 2017. On April 21, 2017, Petitioner submitted a Motion to Dismiss All Charges Based on Expungement, followed by an Amended Motion to Dismiss on May 18, 2017. Therein, Petitioner provided documentation showing that her theft by deception conviction had been expunged by the Superior Court of New Jersey on April 5, 2017. Amended Motion to Dismiss at 1. On this

---

[5] Hearing Officer Moyer never *explicitly* recommended granting the Motion for Summary Judgment, but he effectively concluded in his Proposed Report that there was no genuine issue of material fact as to whether Petitioner had committed a crime of moral turpitude or whether the Commission was required to direct the Department to revoke her certification.

[6] Section 14 of the Educator Discipline Act states:

> (a) The proposed report of the hearing officer shall be accepted by the [C]ommission unless:
>
> (1) the educator or the department files exceptions in accordance with 1 Pa. Code §§ 35.211 (relating to procedure to except to proposed report) and 35.212 (relating to content and form of briefs on exceptions) within 30 days of the date the proposed report was mailed;
>
> (2) within 60 days of the date the proposed report was mailed, the [C]ommission initiates a review of the proposed report in the absence of exceptions; or
>
> (3) within 60 days of the date the proposed report was mailed, the [C]ommission reopens the proceeding for the reception of further evidence in accordance with 1 Pa. Code § 35.233 (relating to reopening by agency action).
>
> (b) After consideration of exceptions to the hearing officer's proposed report or further evidence or its review under this section, the [C]ommission shall accept, modify or reject the hearing officer's proposed report.

24 P.S. § 2070.14.

basis, Petitioner argued that the Commission should terminate the disciplinary proceedings pending against her, as "the charge set forth in the [Department's] Notice of Charges arose solely out of this conviction[,]" and the United States Constitution's Full Faith and Credit Clause[7] essentially required the Commission to take notice of, and give full effect to, the New Jersey expungement order. *Id.* at 1-3.

The Department contested the Amended Motion for several reasons. First, the Department argued it had met its burden of proving that Petitioner had been convicted for a crime of moral turpitude. Department's Objection to Petitioner's Motion to Dismiss All Charges Based on Expungement at 4-5 (Dismissal Objection). Second, the Department stated that since Petitioner's criminal conviction had not been expunged at the time of the disciplinary hearing, the Commission was required to deem the "conviction for a crime involving moral turpitude . . . as competent evidence for purposes of the revocation of [Petitioner's] Pennsylvania teaching certificate and employment eligibility." *Id.* at 5-6. Third, the Department maintained that Petitioner waived her ability to raise expungement before the Commission, as she had not included that issue in her exceptions to the Proposed Report. *Id.* at 6-7. Finally, the Department asserted that the Full Faith and Credit Clause was inapplicable, as terminating the disciplinary proceedings on the basis of the New Jersey expungement order would run counter to Pennsylvania public policy

---

[7] "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. CONST. ART. IV, § 1.

considerations, as embodied in both the Educator Discipline Act and the Commonwealth's laws regarding expungement of criminal convictions. *Id.* at 7-10.[8]

The Commission heard oral argument regarding Petitioner's exceptions to the Proposed Report and her Amended Motion to Dismiss on September 17, 2017, and subsequently issued its decision in favor of the Department on October 24, 2017. The Commission adopted the Hearing Officer's proposed findings of fact and conclusions of law, stating that "[Petitioner] has been convicted of a crime involving moral turpitude and that [Petitioner] failed to sustain her burden of proving the merits of her affirmative defenses." Commission's Final Memorandum and Order at 3-4 (footnote omitted).

Additionally, the Commission agreed with the Department regarding Petitioner's expungement argument on substantive grounds.[9] According to the Commission, there was no question that Petitioner's conviction stemmed from her commission of a crime of moral turpitude. *Id.* at 6. Second,

> the New Jersey expungement statute does not require the Commission to treat [Petitioner] as if she has never been convicted of a crime . . . and [n]either the New Jersey expungement order nor the statute under which it was issued obliterates the fact of [Petitioner's] conviction or precludes the Commission from maintaining and using the record of [Petitioner's] conviction.

*Id.* at 7-8. Finally, the Commission determined that "[i]gnoring [Petitioner's] conviction . . . on the basis of the New Jersey expungement order would be clearly

---

[8] Petitioner replied to the Department's Dismissal Objection on June 5, 2017, reiterating the argument she had made in her Amended Motion to Dismiss. *See* Reply to Dismissal Objection at 1-4.

[9] Consequently, the Commission elected not to address the merits of the Department's procedural waiver argument. *See* Commission's Final Memorandum and Order at 5 n.2.

contrary to the public policy of this Commonwealth." *Id.* at 9. This Petition for Review followed.[10]

Petitioner raises two issues for our consideration. First, Petitioner argues that the Commission erred by declining to terminate the disciplinary proceedings against her, as the expungement effectively wiped her slate clean, from the standpoint of her criminal record, and removed the sole basis upon which the Department sought revocation of her educator certification and employment eligibility (*i.e.*, her theft by deception conviction). Petitioner's Br. at 11-13, 17.[11] Petitioner believes the Commission misapplied the doctrine underpinning the Full Faith and Credit Clause and suggests that the Commission should have instead given full faith and credit to the expungement. *Id.* at 13-14. In addition, Petitioner maintains that the case law cited by the Commission in its Final Memorandum and Order regarding this clause is "inapposite," without elaborating on that conclusory statement, and cites to a Tennessee case, *Butler v. Tennessee Board of Nursing*, No. M201600113COAR3CV, 2016 WL 6248028 (Tenn. Ct. App. Oct. 25, 2016), in support of her proposition that expunged out-of-state convictions cannot be used as the basis for occupational license revocation. Petitioner's Brief at 14. Petitioner then discusses *Kearney v. Bureau of Professional & Occupational Affairs, State Board of Medicine*, 172 A.3d 127 (Pa. Cmwlth. 2017), a case in which our Court held that

---

[10] When considering a challenge to a decision made by the Commission, our standard of review is limited to determining whether the Commission violated a petitioner's constitutional rights, committed an error of law, or issued findings of fact that were not supported by substantial evidence. *Gow v. Dep't of Educ.*, 763 A.2d 528, 531 (Pa. Cmwlth. 2000).

[11] Petitioner argues, without citation to case law or statute, that her failure to raise the matter of expungement in her exceptions to the Proposed Report did not result in waiver of that issue, because the Department "had ample time to address [her Amended] Motion to Dismiss[.]" Petitioner's Br. at 22.

8

the Commonwealth's State Board of Medicine had erred in denying Kearney's application for reinstatement of his physician's assistant license, which had been automatically suspended after he pled guilty to a felony drug offense, subsequently withdrew his plea, entered a drug court program, and then had all information relating to the drug offense expunged after successfully completing a probationary sentence. Petitioner's Br. at 14-17; *see Kearney*, 172 A.3d at 128-29, 138.

Second, Petitioner claims that Section 9.2 of the Educator Discipline Act, as applied to her, violated her due process rights under Article 1, Section 1 of the Pennsylvania Constitution, because she was given a suspension of indefinite length due to an irrebuttable presumption contained in this portion of the Act (*i.e.*, all educators who have been convicted of crimes of moral turpitude should have their educator certification and employment eligibility revoked). Petitioner's Br. at 18. Petitioner then cites to several cases,[12] all of which deemed specific statutory, criminal conviction-based lifetime employment bans to be unconstitutional as-applied on substantive due process grounds, in support of her argument that the Commission violated her due process rights. Petitioner maintains there is functionally no difference between an indefinite suspension and a lifetime ban, or a reasonable justification for imposing such a sanction upon her. Petitioner's Br. at 18-22.[13]

---

[12] *Nixon v. Commonwealth*, 839 A.2d 277 (Pa. 2003); *Peake v. Commonwealth*, 132 A.3d 506 (Pa. Cmwlth. 2015); and *Croll v. Harrisburg School District*, (Pa. Cmwlth. No. 210 M.D. 2012, filed December 13, 2012), 2012 WL 8668130.

[13]    A literal reading of the statute in question would indicate that [Petitioner] is facing an indefinite suspension, which could be a lifetime ban. The limiting factor in the recent cases cited by [Petitioner] and the Department . . . is not the lifetime ban, as the Department . . . would argue, but the imposition of a one-size-fits-

Neither of Petitioner's claims, however, stand up to scrutiny. With regard to Petitioner's first argument, we hold that the Full Faith and Credit Clause did not compel the Commission to give full effect to the Superior Court of New Jersey's expungement of Petitioner's theft by deception conviction.

> The full faith and credit clause is one of the provisions incorporated into the [United States] Constitution by its framers for the purpose of transforming an aggregation of independent, sovereign States into a Nation. The full faith and credit clause, however, does not compel a state to substitute the statutes of other states for its own statutes dealing with a subject matter over which it is competent to legislate. Further, full faith and credit does not mean that States must adopt the practices of other States regarding the time, manner, and mechanisms for enforcing judgments. . . . [Moreover,] [t]he full faith and credit clause does not require a State to subordinate its public policy with respect to persons and their actions within its borders to the laws of any other State, where the enforcement of the right conferred elsewhere would be obnoxious to the public policy of the forum.

*Gies v. Dep't of Trans., Bureau of Driver Licensing*, 770 A.2d 799, 802-03 (Pa. Cmwlth. 2001) (internal citations and some punctuation omitted).

Our General Assembly has enacted the Criminal History Record Information Act (CHRIA), 18 Pa. C.S. §§ 9101-9183, which allows for records pertaining to most criminal offenses, including theft by deception, to be expunged in extremely rare situations. Section 9122(b) of CHRIA declares that

> Criminal history record information may be expunged when:

---

all approach to every crime of moral turpitude. The doctrine that irrebuttable presumptions, where untrue, violate a teacher's right[ ] to due process, is the cornerstone of the cases cited by [Petitioner]. The Department has no rational basis to conclude that [Petitioner] is unfit to teach at this time.

Petitioner's Br. at 21-22.

10

> (1) An individual who is the subject of the information reaches 70 years of age and has been free of arrest or prosecution for ten years following final release from confinement or supervision.
>
> (2) An individual who is the subject of the information has been dead for three years.
>
> (3)(i) An individual who is the subject of the information petitions the court for the expungement of a summary offense and has been free of arrest or prosecution for five years following the conviction for that offense.
>
> (ii) Expungement under this paragraph shall only be permitted for a conviction of a summary offense.

18 Pa. C.S. § 9122(b).[14] Consequently, recognizing the expungement of Petitioner's New Jersey theft by deception conviction would run contrary to the public policy decisions embodied by this statute, which is far more conservative and restrictive than that governing expungement in New Jersey. *Compare id. with* N.J.S.A. § 2C:52-2 (New Jersey statute governing expungement of records pertaining to "Indictable Offenses"). Therefore, the Commission did not err by declining to deem

---

[14] The Department raises the CHRIA argument in its brief:

> The Commission strives to ensure that similar violations result in similar outcomes. *See* 22 Pa. Code § 233.113. It is noted that had [Petitioner] been convicted of the same crime in Pennsylvania, she would not be eligible for expungement of her crime. The expungement of criminal convictions varies greatly across the jurisdictions. In Pennsylvania, there is limited basis for the expungement of a criminal conviction. *See generally* 18 Pa.C.S. § 9122. In New Jersey, expungements of criminal convictions are granted far more liberally than in Pennsylvania pursuant to state statute. See N.J.S.A. § 2C:52-2, N.J.S.A. § 2C:52-3.

Department's Br. at 31 n.25.

Petitioner's theft by deception conviction expunged and terminate disciplinary proceedings against her on that basis.[15]

Furthermore, the Commission did not violate Petitioner's due process rights by revoking her educator certification and employment eligibility, as Section 16 of the Educator Discipline Act provides a mechanism by which educators can seek reinstatement of their revoked teaching licenses:

> (a) An educator whose certificate or employment eligibility has been suspended, revoked or surrendered may apply to the commission for an order lifting the suspension or reinstating the certificate. The commission shall order the lifting of the suspension or reinstatement if the commission determines it would be just and proper. The commission shall seek and consider recommendations from the department prior to ordering the lifting of the suspension or reinstatement of the certificate and employment eligibility and shall conduct hearings on the application at the request of the educator in accordance with procedures established by the commission in accordance with this act. The commission shall also seek

---

[15] The case law cited by Petitioner in no way alters this conclusion. *Butler* is a Tennessee case applying Tennessee law and does not include analysis of, or even a single reference to, the Full Faith and Credit Clause, which severely limits its persuasive value. *See* 2016 WL 6248028, at *10-*16. As for *Kearney*, that case is entirely distinguishable, as it did not deal with a conviction from a foreign jurisdiction or necessitate any Full Faith and Credit Clause analysis. Rather, *Kearney* revolved around a license revocation based upon a withdrawn guilty plea given in the Court of Common Pleas of Lackawanna County to one felony count of obtaining a controlled substance by misrepresentation or fraud, in violation of Section 13(a)(12) of The Controlled Substance, Drug, Device and Cosmetic Act (Controlled Substance Act), Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. § 780–113(a)(12). *See* 172 A.3d at 129. Our holding in favor of Kearney was based upon a relatively unique feature of the Controlled Substance Act, by which Kearney was able to have the records related to his criminal proceeding expunged after completing a sentence that we found "was the functional equivalent of a probation without a verdict[.]" *Kearney*, 172 A.3d at 131-38. Because all of the information relating to Kearney's drug offense had been expunged, we determined that CHRIA barred the State Board of Medicine (Board) from considering that information when determining whether Kearney should have his physician's assistant license reinstated, reversing the Board's denial of Kearney's application on that basis and remanding for further proceedings. *Id.* at 136-38.

and may consider recommendations from the school entity or entities in which the educator was employed at the time of the misconduct. For purposes of determining whether it is just and proper to lift a suspension or reinstate a certificate, the commission may consider:

(1) The conduct which resulted in discipline.

(2) Other past conduct of the applicant.

(3) The applicant's current attitude toward past conduct.

(4) Rehabilitation efforts and activities.

(4.1) Evidence of compliance with any conditions imposed as part of the discipline.

(5) References and letters of support of or in opposition to reinstatement.

(b) The commission shall not lift the suspension or reinstate the certificate or employment eligibility of an educator if the suspension or revocation resulted from any of the following:

(1) A finding of guilt by the commission for sexual abuse or exploitation.

(2) Surrender of a certificate or employment eligibility for conduct relating to sexual abuse or exploitation.

(c) The commission shall not lift the suspension or reinstate the certificate or employment eligibility of an educator convicted of an offense set forth in section 111(e)(1) through (3) of the . . . Public School Code of 1949, for the time period set forth in that section.

24 P.S. § 2070.16 (quotation marks omitted); *see also Bowalick v. Dep't of Educ.*, 840 A.2d 519, 522 (Pa. Cmwlth. 2004) ("Upon proof of a conviction of a crime of moral turpitude, revocation on summary judgment [of an educator's certification and employment eligibility] does not violate due process.").

[This] two-step process [*i.e.*, automatic revocation, followed by potential reinstatement upon application] . . . recognizes that some educators, despite their conviction for crimes of moral turpitude, should be re-admitted to

13

their profession and therefore, the Department is required to reinstate a [teaching] certificate after a hearing if [the Commission] deems reinstatement to be just and proper. A two-step decertification/reinstatement process constitutes a rational way for the General Assembly to protect its children and further the State's legitimate interest in ensuring that state-certified educators are fit to work closely with students.

*Startzel v. Dep't of Educ.*, 562 A.2d 1005, 1007-08 (Pa. Cmwlth. 1989) (discussing 24 P.S. § 1225(j),[16] a predecessor to 24 P.S. § 2070.16). Therefore, Petitioner's due process rights were not violated by the Commission's revocation of her educator certification and employment eligibility, as this sanction represents a rational exercise of the Commonwealth's police power and, in addition, can potentially be undone at this point if Petitioner chooses to avail herself of the aforementioned reinstatement process. Consequently, we affirm the Commission's October 24, 2017 Order, in full.

_____

ELLEN CEISLER, Judge

---

[16] Section 2 of the Act of May 29, 1931, P.L. 210, added by section 2 of the Act of August 13, 1963, P.L. 689, *formerly* 24 P.S. § 1225(j) (repealed by Act 71 of December 14, 1989).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rebecca C. Jones,          :
            Petitioner     :
                              :
       v.                     :    No. 1690 C.D. 2017
                              :
Pennsylvania Department of    :
Education,                     :
            Respondent   :

## O R D E R

AND NOW, this 4th day of October, 2018, the Professional Standards and Practices Commission's October 24, 2017 Order is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge